ROBERTS *v.* KOEHLER, Receiver, etc.

*(Circuit Court, D. Oregon. February 25, 1887.)*

1. CARRIERS—OF PASSENGERS—LIEN ON BAGGAGE.
   The fare paid by a passenger to a carrier includes the transportation of his baggage; and the carrier has a lien thereon for the fare, and may detain the same until payment thereof.
2. SAME—CASE IN JUDGMENT.
   R. purchased an unconditional ticket for a passage on the Oregon & California Railway from Portland to Ashland, and, after his ticket had been taken up by the conductor, stopped over at Grant's Pass, without his consent, leaving his baggage, consisting of a large valise, to be carried on to Ashland, where it was taken charge of by the employes of the road. On the next day R. got on the train to Ashland, but refused to pay the fare thereto, $1.79, when the conductor allowed him to remain on the train, but refused to deliver him his valise at Ashland until he paid the additional fare. *Held,* that the journey from Portland to Ashland was performed under one contract modified by the action of R. in stopping over, whereby he incurred an additional charge for his transportation, for which the carrier had a lien on the baggage so long as it remained in his possession.

*(Syllabus by the Court.)*

Action to Recover Damages.
*Edward B. Watson,* for plaintiff.
*Earl C. Bronaugh,* for defendant.

DEADY, J. This action was brought against the defendant, the receiver of the Oregon & California Railway, to recover damages for alleged maltreatment of the plaintiff while traveling on the road between Port-

land and Ashland, Oregon. The cause was tried with a jury, who gave a verdict for the defendant, and is now before the court on a motion for a new trial. It appeared on the trial that the plaintiff purchased from the defendant a combination ticket from Portland to San Francisco, where he resided, and started on the south-bound Oregon & California train on July 13, 1885; that about 200 miles south of Portland the conductor cut off from said combination ticket and took up the coupon, entitling the plaintiff to transportation on the railway between Portland and Ashland, a distance of about 300 miles, and gave him his private check for future identification; that at Grant's Pass, a station some miles south of Roseburg, the plaintiff was left behind, and a large leather valise belonging to him was carried on the train to Ashland. The next passenger train going south passed Grant's Pass in the evening of July 14th, and the plaintiff got on the same, when the conductor, in obedience to the rules of the company, demanded his fare to Ashland, $1.79, which the plaintiff refused to pay, alleging that he had paid his fare once, and had been left behind by the misconduct of the conductor on the train of the day previous, to which the conductor replied that he would give him a receipt for the payment, and, if his statement proved correct, the money would be refunded to him. The plaintiff still refused to pay, and suggested to the conductor that he might put him off the car, to which the latter replied that he would hold his valise for the fare. When the train arrived at Ashland, the plaintiff attempted to take his valise out of the office where it had been deposited the day before, which the conductor resisted, and, with the aid of a brakeman, finally prevented.

The plaintiff in his testimony attributed his being left at Grant's Pass to the misconduct of the conductor in starting the train without warning, and without waiting the usual time. But on the whole evidence it was so manifest that his testimony was grossly and willfully false in this respect, and that he was left in consequence of his own willfulness in leaving the train just as it was about to start, and after he was warned of the fact, and going some distance from the track to get something to eat, that his counsel abandoned the claim for damages on that account before the jury, and only asked a verdict for the alleged mistreatment of the plaintiff at Ashland in the struggle for the possession of the valise.

The court instructed the jury that, if they believed the plaintiff's statement about the affray at Ashland arising out of his attempt to possess himself of the valise, they ought to find a verdict for him, but if they did not believe it, and were satisfied that the conductor used only such force as was necessary and proper to prevent the plaintiff from taking the valise out of the possession of the defendant without first paying the extra fare, they ought to find for the defendant. In this connection the court also instructed the jury that under the circumstances the defendant had a lien on the plaintiff's valise for his fare from Grant's Pass to Ashland on July 14th, and therefore the conductor had a right to retain the possession of the same until such fare was paid. To this latter instruction counsel for the plaintiff then excepted, and now asks for a new trial on account thereof.

A carrier of passengers is responsible, as a common carrier, for the baggage of a passenger, when carried on the same conveyance as the owner thereof. The transportation of the baggage, and the risk incurred by the carrier, is a part of the service for which the fare is charged. *Hollister* v. *Nowlen*, 19 Wend. 236; *Cole* v. *Goodwin*, Id. 257; *Powell* v. *Myers*, 26 Wend. 594; *Merrill* v. *Grinnell*, 30 N. Y. 609; *Burnell* v. *New York Cent. Ry. Co.*, 45 N. Y. 186; Thomp. Carr. 520, § 8; Story, Bailm. § 499. Correspondingly, a carrier of passengers has a lien on the baggage that a passenger carries with him for pleasure or convenience. Overt. Liens, § 142; Thomp. Carr. 524, § 11; Ang. Carr. § 375; 2 Ror. Rys. 1003, § 11. But this lien does not extend to the clothing or other personal furnishings or conveniences of the passenger in his immediate use or actual possession. *Ramsden* v. *Boston & A. Ry. Co.*, 104 Mass. 121.

A ticket for transportation on a railway between certain *termini*, which is silent as to the time when or within which it may be used, does not authorize the holder to stop over at any point between such *termini*, and resume his journey thereon on the next or any following train. The contract involved in the sale and purchase of such a ticket is an entire one, and not divisible. It is a contract to carry the passenger through to the point of his destination as one continuous service, and not by piecemeal, to suit his convenience or pleasure. 2 Ror. Rys. 971, § 10; 2 Wood, Ry. Law, § 347; *Cleveland, etc., Ry. Co.* v. *Bartram*, 11 Ohio St. 457; *Drew* v. *Central Pac. Ry. Co.*, 51 Cal. 425.

Admitting these legal propositions, counsel for the plaintiff insists that the defendant had no lien on the valise in question, and therefore no right to retain it; and in support of this proposition he ingeniously argues that the journey from here to Ashland was divided into two distinct parts,—one from Portland to Grant's Pass on July 13th, for which his fare was paid to Ashland, and on which the valise went through to that point, and one from said pass to Ashland, on which, although no fare was paid, yet no baggage was carried.

Before considering this proposition it is well to remember that the undertaking of the company to transport this valise, as baggage, was only incidental to the principal undertaking to carry the owner thereof; and, when the latter was performed or discharged, the former was also. Therefore, if the journey in reference to which the defendant undertook to carry the same ended, by the act of the plaintiff, at Grant's Pass, the carriage of the valise from there to Ashland on the same train was an additional service performed for him, for which the defendant was entitled to an additional compensation as the carrier of so much freight, and had a lien thereon for the same; for a traveler is not entitled to have his personal baggage carried in consideration of the fare paid by him, unless it is on the same train which carries him. Thomp. Carr. 521, § 8.

But, in my judgment, the transaction must be regarded, for the purpose of this question, as one journey, in the course of which the plaintiff incurred an additional charge of $1.79 for transportation. In effect, the plaintiff paid his fare to Ashland on the train of July 13th, with the

privilege of stopping over at Grant's Pass, and finishing the journey on the next day's train, on the payment of the extra charge of $1.79. He saw proper to avail himself of this privilege, and thereby became indebted to the defendant accordingly. And whether the plaintiff allowed his baggage to be carried through on the first train, or kept it with him, the defendant had a lien on it for all the unpaid charges for transportation which the plaintiff incurred during the journey. There was but one contract for the transportation of the plaintiff, including his baggage, which was modified or altered, in the course of its performance, by his own act or omission.

Suppose there were first and second-class carriages on this road, and on July 13th the plaintiff paid for and took passage in one of the latter for Ashland, but, arriving at Grant's Pass, he got into one of the former, and rode to Ashland, refusing to pay the additional fare when demanded, can there be any doubt that the defendant would have a lien on his baggage for the same, and might, if he had or got possession of it, retain it until such fare was paid? Certainly not. Substantially, this is the parallel of the plaintiff's case. The defendant was clearly in the right in detaining the valise until the fare was paid, and the plaintiff was as clearly in the wrong in attempting to take it without doing so. Indeed, his conduct throughout this transaction looks very much like he was playing a game to involve the defendant in a lawsuit out of which he might make some money.

The motion for a new trial is disallowed.